UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES M. MURPHY,<br><br>                Plaintiff,<br><br>    v.<br><br>RICHARD WILLIAM WEDAN,<br><br>                Defendant. | CASE NO. 3:21-cv-05707-BHS<br><br>ORDER |

This matter comes before the Court on Defendant United States of America's Motion to Dismiss and Motion for More Definite Statement, Dkt. 47. The case arises out of Plaintiff James Murphy's allegation that Defendant Richard Wedan intentionally inflicted emotional distress on him by conducting an investigation into sexual assault allegations against Murphy and testifying against him in a medical board hearing. Murphy and Wedan were both formerly employed by the National Guard; Murphy has since been discharged and Wedan has retired. The Government has twice substituted into this action on Wedan's behalf as a result of confusion and disagreement on whether Murphy's claims arose in the scope of Wedan's employment as a federal employee.

In the instant motion, the Government seeks dismissal of Murphy's First Amended Complaint, Dkt. 45, arguing that he failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA") and that his claims are barred by the *Feres* doctrine. Dkt. 47. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and rules as follows.

## I.   BACKGROUND

In 2014, Colonel Richard Wedan, a now-retired employee of the Oregon Air National Guard ("ORANG"), became aware of allegations that Murphy performed an unauthorized gynecological exam on a fellow ORANG employee in November 2011. Dkt. 1-1 at 5; Dkt. 6 at 2. Wedan was Murphy's indirect supervisor at the time. Dkt. 6 at 2. Murphy was ultimately dishonorably discharged from the National Guard as a result of the sexual assault claims. *Id.*

Murphy sued Wedan in Clark County small claims court in August 2021 for intentional infliction of emotional distress, seeking $10,000 in damages. Dkt. 1-1. Murphy alleged that Wedan failed to report the allegations to local law enforcement because Wedan knew the allegations were false and Wedan did not want the accuser to be charged with filing a false police report because of his close relationship with the accuser and her family. *Id.* at 6. Murphy also alleged that Wedan informed the Oregon National Guard Inspector General of the accuser's complaints, conspired to remove Murphy from his position, and provided false testimony to the medical board about these allegations. *Id.* at 6–8.

1    The Government removed the case to this Court in September 2021 under 28 U.S.C. § 1442(a)(1), Dkt. 1, and substituted itself as Defendant, asserting that Wedan was a federal employee acting within the scope of his employment and that the United States Government is therefore the proper defendant, Dkt. 4.

The Government then moved to dismiss Murphy's complaint, arguing that this Court lacked subject matter jurisdiction. Dkt. 6. In response, Murphy challenged the case's removal and the Government's substitution. Dkt. 19. The Court ordered the parties to provide additional briefing regarding Wedan's status as a federal employee. *Id.* After the parties submitted supplemental briefing, *see* Dkts. 29, 31, the Court concluded that although Wedan was acting in the scope of his employment during the initial investigation, the Government's substitution for Wedan was improper because he was retired at the time he testified before the medical board,[1] Dkt. 32. The Court therefore terminated the Government's substitution and ordered that Wedan be re-substituted as the proper defendant. *Id.* Because the Government's certification of Wedan's employment status is conclusive for removal purposes, the Court could not remand, and it therefore exercised supplemental jurisdiction over Murphy's state law tort claim. *See id.* at 7 (quoting *Osborn v. Haley*, 549 U.S. 225, 243 (2007)).

---

[1] At that time, Murphy had seemingly specified that his only claim against Wedan was based on his testimony before the board.

ORDER - 3

1    Wedan then moved to dismiss Murphy's complaint, arguing that he was entitled to
2    absolute witness immunity for his testimony before the medical board.[2] Murphy did not
3    respond but rather moved to strike Wedan's motion to dismiss, arguing that it was
4    "*redundant and moot* to the original complaint" and that Wedan could not file a second
5    motion to dismiss. Dkt. 37 at 1 (emphasis in original). He also argued that not all of his
6    claims against Wedan were barred by witness immunity. The Court dismissed Murphy's
7    complaint, concluding that Wedan was entitled to witness immunity for his appearance
8    before the Board. Dkt. 42. But the Court granted Murphy leave to amend his claims
9    against Wedan after his retirement because Murphy had asserted that some of his
10   assertions were not based on Wedan's testimony. *Id.*

11   Murphy filed an amended complaint, Dkt. 45, and the Government again
12   substituted in for Wedan, Dkt. 46, because his amended complaint contained allegations
13   about Wedan's pre-retirement conduct. The Government now moves to dismiss
14   Murphy's amended complaint, once again arguing that the Court lacks subject matter
15   jurisdiction because Murphy failed to exhaust his FTCA administrative remedies and that
16   his claims are barred under the *Feres* doctrine. Dkt. 47. The Government alternatively
17   moves the Court to order Murphy to file a more definite statement explaining his claims.
18   *Id.* Murphy's response again challenges the Government's substitution for Wedan,
19   arguing that the substitution was wrongful, that Wedan was not acting within the scope of

---

[2] Wedan also moves to stay discovery pending the Court's ruling on his motion to dismiss. Dkt. 35. That motion is DENIED as moot.

1  his employment, and that therefore the FTCA and the *Feres* doctrine do not apply.³ Dkt.
2  48.

## II.  DISCUSSION

### A.  Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

---

³ Murphy also filed a "Motion for Leave to File Surreply," Dkt. 50, which is actually just his surreply in which he disputes the Government's Reply, Dkt. 49. Under the local rules, a party may file a surreply only to move to "strike material contained in or attached to a reply." LCR 7(g). A surreply is also not supposed to exceed three pages or contain extraneous argument beyond the request to strike. *Id.* Murphy's surreply is improper. Therefore, Murphy's "Motion," Dkt. 50, is DENIED, and his Surreply is STRICKEN.

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555.).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (internal citations omitted). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.    Substitution**

Federal employees are absolutely immune from "common-law tort claims arising out of acts they undertake in the course of their official duties" under the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), which is part of the FTCA. *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The Westfall Act provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). In a challenge to the Government's substitution into an action, the Attorney General's certification is subject to the district court's review, but it is "prima facie evidence that a federal employee was acting in the scope of [his] employment at the time of the incident and is conclusive unless challenged." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) (internal citation omitted). The district court reviews the Attorney General's certification de novo. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). "The party seeking review bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Billings*, 57 F.3d at 800.

Whether Wedan was acting within the scope of his employment at the time of the hearing is a question of state law. *See Green v. Hall*, 8 F.3d 695, 698–99 (9th Cir. 1993). The parties do not dispute that all relevant acts occurred in Oregon and that therefore Oregon scope of employment rules apply. Under Oregon law, an employee is acting within the scope of employment if: (1) the act "occurred substantially within the time and space limits authorized by the employment;" (2) "the employee was motivated, at least partially, by a purpose to serve the employer;" and (3) "the act is of a kind which the employee was hired to perform." *Minnis v. Or. Mut. Ins. Co.*, 334 Or. 191, 201 (2002) (internal citations omitted). For intentional torts, in place of the second and third factors, the court must examine whether "acts that *were* within [the employee's] scope of employment resulted in the acts which led to injury to the plaintiff." *Doe v. Holy See*, 557 F.3d 1066, 1082 (9th Cir. 2009) (emphasis in original) (internal quotations and alterations omitted).

1    The Court has already ruled that Wedan was not acting within the scope of his
2 employment when he testified before the medical board after his retirement. *See* Dkt. 32
3 at 7. The Court also stated in that Order that it agreed with the Government that
4 "Wedan's initial investigation into the sexual assault allegations was performed in the
5 scope of his employment" because "[i]t was part of Wedan's job to investigate such
6 allegations and the investigation occurred at work while he was still employed by
7 ORANG." *Id.*

8    Because Murphy alleges that Wedan *intentionally* inflicted emotional distress
9 upon him, the appropriate test is that for intentional torts. Wedan's investigation
10 "occurred substantially within the time and space limits authorized by [his] employment."
11 *Minnis*, 334 Or. at 201. Further, the acts that allegedly caused Murphy's injury were
12 within Wedan's scope of employment. Murphy alleges that Wedan performed an
13 investigation, met with the accuser and her family, and communicated internally with
14 others about the investigation and how to proceed. *See generally* Dkt. 45. All of those
15 alleged acts occurred in the scope of Wedan's employment.

16    Murphy does allege that there was a three-month period, from February to May
17 2015, when Wedan had been "relieved of command at the 142nd Wing" that he was not
18 working in a 502(f) position. Dkt. 45 at 3. Murphy argues that the Government's
19 substitution for that period is improper as well. He alleges that during that time, "Wedan
20 interviewed with the Plaintiff's attorney (misleading her on significant details), prepped
21 testimony with the administrative prosecutor and then despite not being under subpoena,
22 'called in' his testimony on May 7th or 8th 2015 to the military discharge board." *Id.*

The same analysis largely holds true for claims arising between February and May 2015. It seems Wedan continued to act in the scope of his employment at that time and Murphy has not satisfied his burden to prove either (1) that Wedan was actually on leave at that time, or (2) that he was not acting within the scope of his employment.

Wedan was acting within the scope of his employment during all of Murphy's claims arising from conduct prior to May 31, 2015. Therefore, the Government's substitution was proper as to those claims. The Government's substitution was improper, however, for any potential claims arising after Wedan's retirement on May 31, 2015.

**C.     Claims Prior to May 31, 2015**

The Court permitted Murphy to amend his complaint as to any claims arising after Wedan's retirement. In his amended complaint, Murphy submits very few specific allegations against Wedan, aside from generally asserting that he intentionally inflicted emotional distress upon Murphy. He continues to discuss allegations that occurred prior to Wedan's retirement in May 2015. *See, e.g.*, Dkt. 45 at 5 ("The Defendant engaged in 'outrageous conduct' that started in 2014 and continued beyond his terminal leave and beyond his retirement date to 'remove murph.'").

As sovereign, the Government is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Any waiver of immunity is to be strictly construed in favor of the United States. *United States v. Nordic Vills., Inc.*, 503 U.S. 30, 33–34 (1992). The FTCA is a limited waiver of sovereign immunity that permits claims to be brought against the United States for the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office

or employment." 28 U.S.C. § 1346(b)(1). To bring an FTCA claim against the United States, a plaintiff must have presented the claim to the appropriate federal agency and then the claim must have been finally denied by that agency. 28 U.S.C. § 2675(a). Thus, exhaustion of the administrative remedy is a jurisdictional prerequisite to filing an FTCA action. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

There is no dispute that Murphy did not exhaust any FTCA claims against the Government. Because the United States' substitution into this action was proper for any claims arising in the course of Wedan's employment and because Murphy failed to exhaust those claims under the FTCA, those claims are not viable, and they are DISMISSED with prejudice.[4]

**D.     Claims After May 31, 2015**

The Government's substitution is improper for claims arising after Wedan's retirement. Nevertheless, the Court already ruled that Wedan enjoys witness immunity for any claims related to Wedan's testimony before the Medical Review Board. Dkt. 42 at 6–8. The only claim Murphy raises in his amended complaint arising after Wedan's retirement is that Wedan contacted the Drug Enforcement Administration and the National Provider Identifier Registry to "provide fraudulent testimony" and to encourage

---

[4] The Government also argues that it is immune from suit because it "has not waived sovereign immunity for injuries to servicemembers, arising out of activity incident to service." Dkt. 47 at 4 (citing *Feres v. United States*, 340 U.S. 135, 146 (1950)). The Government argues that Wedan's alleged mishandling of the sexual assault allegations against Murphy was incident to his service, *id.*, while Murphy argues it was not, Dkt. 48 at 7. While it seems likely the broad *Feres* doctrine would apply in this case, the Court need not address it here as it has already been established that Murphy failed to exhaust his claims under the FTCA.

1 them to take action against Murphy. Dkt. 45 at 5. Murphy does not make any other

2 specific allegations against Wedan in his amended complaint.

3       In his response to the Government's Motion to Dismiss, Murphy also claims that

4 "Wedan, <u>after</u> retiring, continued to direct [ORANG Colonel Eric] Schadler to deny the

5 plaintiff's due processes under Air Force Instruction (AFI) 44-119 . . . and that Wedan

6 was instrumental in events underlying a Privacy Act violation by an Air Force attorney

7 that ended the Plaintiff's employment at a Ft Bragg, NC, Army Hospital." Dkt. 48 at 3

8 (emphasis in original). This claim is not asserted in Murphy's amended complaint.[5] Even

9 if it had been, it is confusing and unclear, and no specific facts have been asserted to

10 support such a claim. Murphy has claimed throughout this litigation that all acts took

11 place in Oregon. It is unclear how his employment at Fort Bragg is relevant, when that

12 took place, or what it means to violate AFI 44-119.

13       Moreover, the documentation Murphy attached to his amended complaint does not

14 make his potential claims any more plausible. The quality assurance document Murphy

15 claims Wedan suppressed explains that the investigation was inconclusive. It is not

16 exculpatory. Similarly, the Discharge Review Board ("DRB") document explains that

17 Murphy's discharge was changed from dishonorable to honorable because the DRB

18 found that his representation had been ineffective. Assuming Murphy was wrongfully

19

---

20     [5] Murphy does assert in his amended complaint that Wedan "undermin[ed] the Plaintiff's assigned counsel" and "direct[ed] a subordinate to suppress and exculpatory quality assurance
21 report from the Plaintiff's counsel and the military separation board," but the Court's understanding is that those events took place prior to Wedan's retirement. The claims are
22 therefore barred for failure to exhaust FTCA remedies.

dishonorably discharged, it appears as though the at-fault party was not Wedan, but Murphy's defense counsel[6] and/or his accuser.

Despite the issues raised by the Government and those identified by the Court, it is not clear to the Court that it can rule on Murphy's claims against Wedan upon the Government's motion, where the Government's substitution is improper. All claims against Wedan for which the Government's substitution was proper—that is, all claims arising prior to May 31, 2015—have been and remain DISMISSED. The Government need not substitute in again as the Court will not permit further argument on those claims. Similarly, any claims against Wedan arising from his testimony before the medical board have been and remain DISMISSED. Murphy's claims against Wedan arising after May 31, 2015 that do not pertain to his medical board testimony remain. Wedan shall be re-substituted and given an opportunity to respond to Murphy's amended complaint, Dkt. 45.

### III.  ORDER

Therefore, it is hereby **ORDERED** that the Government's Motion to Dismiss, Dkt. 47, is **GRANTED in part** and its Motion for More Definite Statement, Dkt. 47, is **DENIED as moot**. Plaintiff James Murphy's Motion to File Surreply, Dkt. 50, is **DENIED** and his Surreply is **STRICKEN**. The Government's substitution into this action is again **TERMINATED**, and Wedan shall be **RE-SUBSTITUTED** as the proper defendant.

---

[6] Nonetheless, any potential claim Murphy had against his counsel might be time-barred.

Dated this 29th day of July, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge